UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOHN AMES and MICHAEL PANTONY,
as TRUSTEES OF THE UNITED WELFARE
FUND-WELFARE DIVISION, FRED
TREMARCKE, and UNITED WELFARE
FUND-WELFARE DIVISION,

                                    **MEMORANDUM and ORDER**

              Plaintiffs,

                                    03-CV-5055 (SLT)(VVP)

      — against —

GROUP HEALTH INCORPORATED,

             Defendant.
----------------------------------------------------------X

**TOWNES, United States District Judge:**

      Plaintiffs John Ames and Michael Pantony, as representative Trustees and Fiduciaries of the United Welfare Fund-Welfare Division ("the Fund" or "UWF") and, Fred Tremarcke, a participant in the Fund, commenced suit against defendant Group Health Incorporated ("GHI") under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. 1001 *et seq.* ("ERISA"), seeking relief pursuant to ERISA §§ 409, 502, and 702 in the form of equitable remedies. Tremarcke seeks to recover benefits due to him under the terms of the plan. Plaintiffs also seek relief for various state law claims alleging *inter alia* breach of contract and breach of fiduciary duties. (Am. Compl. § 1.)

      The Fund is a jointly administered, multi-employer, Taft-Hartley benefit fund trust administered by trustees designated by a union and by employers, established and maintained pursuant to § 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5) ("LMRA"). According to plaintiffs, a board of trustees with representatives from both the union and employers governs the Fund. Plaintiffs Pantony and Ames sit on the board of trustees.

Plaintiffs move and defendant cross moves for partial summary judgment for the second and third causes of action in the amended complaint. The Court describes these claims in turn.

Plaintiffs Ames and Pantony claim that after Tremarcke[1] went on disability leave beginning December 2001, his employer continued to make contributions for health insurance on his behalf through and including May 2002, when Tremarcke retired, but GHI refused to extend him full coverage. (Am. Compl. ¶¶ 34-51.) For the second cause of action, plaintiffs Ames and Pantony allege that GHI's refusal to pay the majority of Tremarcke's medical expenses constitutes illegal discrimination in violation of the Health Insurance Portability and Accountability Act, 29 U.S.C. § 1182. (Am. Compl. ¶ 51.)

For the third cause of action, Tremarcke alleges that GHI's refusal to pay all or most of his medical claims constitutes a breach of the policy between the Fund and GHI. (Am Compl. ¶¶ 34-59. He brings suit under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to recover benefits allegedly owed to him under the plan and to enjoin acts which may violate provisions of ERISA Title 1. Tremarcke claims that on September 24, 2003, he sent a letter to GHI appealing its denial of his benefits. (Am. Compl. ¶ 54.) On October 15, 2003, Tremarcke claims that GHI sent a letter to him indicating that it had received his appeal and was reviewing it, but he had received no further correspondence from GHI regarding the appeal of the denial of his claim for benefits. (Am. Compl. ¶ 55.) Tremarcke charges GHI with being in material non-compliance with the Department of Labor regulation governing claims procedures, 29 C.F.R. § 2560.503-1.

---

[1] Tremarcke, a resident of New Jersey, was an employee of T.J.H. Chevrolet LLC d/b/a Classic Chevrolet ("Classic Chevrolet"). (Am. Compl. ¶ 36.)

(Am. Compl. ¶ 59.) Tremarcke seeks to recover the benefits allegedly due him under the terms of the plan as provided by ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). (Am. Compl. ¶ 59.)

## BACKGROUND

*The UWF-GHI Group Contract*

The Fund has provided its participants and beneficiaries health insurance policies through various insurance carriers, including Oxford Health Plans ("Oxford"), and Aetna Health Care ("Aetna"). (Plaintiffs' Rule 56.1 Statement, ¶ 1.) In 2002, the Fund's policies with Oxford and Aetna were due to expire. In 2001, GHI submitted to the Fund its proposal for health care coverage for UWF participants who were members of the United Service Workers of America ("USWA"). (Defendant's Rule 56.1 Statement, ¶ 4.) Following negotiations between the parties, GHI was selected to provide health insurance for Fund members from February 1, 2002 through March 31, 2003. (Plaintiffs' Rule 56.1 Statement, § 1.) Participants who had coverage through Oxford became covered under the GHI policy on February 1, 2002. Participants insured by Aetna became covered under the GHI plan on April 1, 2002. (Plaintiffs' Rule 56.1 Statement, ¶ 1.)

Pursuant to the Proposal, UWF and GHI agreed that participants entitled to enroll in the GHI-insured group plan were "all active full-time (**in excess of 20 hours per week**) eligible UWF participants" who were members of a collective bargaining agreement ("CBA") with the UWSA. (Defendant's Rule 56.1 Statement, ¶ 7, Plaintiffs' Second Rule 56.1 Statement, ¶ 7.) Additionally, a Rider to the Group Contract between GHI and USW limited eligibility for coverage under the Plan only to "bona fide members of [UWF], who are also actively employed on a full-time basis." (Kessler Aff., Ex. B, at UWF 0146.) The collective bargaining agreement

3

between plaintiff Tremarcke's employer, Classic Chevrolet, and his union, USW Local 455 provided for participation in the Fund's health plan. The CBA provided, in relevant part:

> d) Benefits provided by United Welfare Fund for employees covered by this Agreement shall terminate … on the first date of the month following the date an employee ceases to be employed by the Employer. Termination of employment and ceases to be employed shall be defined as cessation of active work by termination, layoff, work stoppage, leave of absence, resignation, quitting, dismissal, being pensioned or retired, *or cessation of active work because of disability.*

(Ex. C. to Kessler Aff., UWF 0027-0028.) (emphasis supplied.)

The Fund terminated its contract with GHI effective March 1, 2003 due to alleged deficiencies in GHI's service. (Am. Compl. § 31.)

Beginning in November 2001, Tremarcke claimed he was disabled and stopped working in December 2001. (Tash Decl. ¶ 3., Plaintiff's Motion.) On September 6, 2002, Tremarcke entered the hospital as an inpatient and underwent a heart transplant on December 25, 2002. He was discharged on November 26, 2003 after spending more than a year in the hospital. (Plaintiffs' Rule 56.1 Statement, ¶ 22.)

Prior to April 1, 2002, Tremarcke received his health coverage through Aetna. On April 1, 2002, Tremarcke was not physically at his place of employment. (Tash Decl. ¶ 2.) A letter dated May 31, 2002, on Classic Chevrolet letterhead authored by an employee of Classic Chevrolet, stated that Tremarcke's official date of retirement was May 31, 2002. (Ex. 15 to Tash Decl.) Until May 31, 2002, Tremarcke's employer considered him to be "a Classic Chevrolet long term valued employee who Classic Chevrolet maintained as active when he got sick in order to assure his return to work at Classic upon his recovery." (Condo Decl. ¶ 2.) Classic Chevrolet submitted active employee contributions to UWF on behalf of Tremarcke through May 31, 2002. (Plaintiffs' Rule 56.1 Statement, ¶ 16.) Thus, plaintiffs argue, Tremarcke was

4

"an active employee at the time GHI began providing medical coverage to UWF participants." (Plaintiffs' Rule 56.1 Statement, ¶ 8.) Defendant disputes this conclusion.

Plaintiffs write that it is undisputed that the collective bargaining agreement "signed by Classic Chevrolet <u>originally excluded from coverage a union employee who ceased working because of a disability</u>. Classic Chevrolet and USW Local 455 amended the CBA on January 31, 2002 through the Side Letter of Understanding which continued coverage for Mr. Tremarcke until his retirement regardless of whether he was disabled or working."[2] (Plaintiffs' Second Rule 56.1 Statement ¶ 12, Ex. 18 to Condo Dec., UWF 0051.) (emphasis supplied.)

Plaintiffs include a copy of this so-called "Side Letter of Understanding." The letter is signed on January 31, 2002 by a representative of the USWA and Classic Chevrolet. The Court cannot ascertain the identity of the signatories. The letter is hand-written on what appears to be notebook paper. The letter is not notarized or signed by attorneys so far as the Court can tell. (Ex. 18 to Condo Dec., UWF 0051.) The letter, in relevant part states: "The Employer's Long Term employee Mr. Fred Tremarcke, in recognition of his service, will be maintained as an active employee until his date of retirement. The above understanding will not set precident [*sic*] for any other employee. " *Id.*

Plaintiffs state that Classic Chevrolet did not inform the Fund of any change in Tremarcke's employment status until after his May 2002 "retirement." (Plaintiffs' Second Rule 56.1 Statement ¶ 19.) Classic Chevrolet continued to make premium payments to UWF on Tremarcke's behalf, just as it had throughout his participation in the UWF, until May 31, 2002.

Defendant states that "[s]ince Tremarcke ceased working because of a disability, he was

---

[2] Ms. Condo served as the Controller for Classic Chevrolet.

5

not eligible to receive health coverage pursuant to the governing CBA." (Defendant's Rule 56.1 Statement, ¶¶ 16-17.) Plaintiffs dispute this statement and assert that the "appropriate parties amended the governing CBA in order to ensure coverage for Mr. Tremarcke, a long time, valued employee." (Plaintiffs' Second Rule 56.1 Statement, ¶ 16.)

Some of Tremarcke's claims were adjudicated and paid by GHI prior to the verification of his employment status at Classic Chevrolet and eligibility for health coverage under the UWF-GHI Group Contract. (Defendant's Rule 56.1 Statement, ¶ 23.) In August 2003, GHI informed USWA and UWF that it denied Tremarcke's claims for benefits on the ground that Tremarcke had failed to satisfy the eligibility requirements for coverage. (Defendant's Rule 56.1 Statement, ¶ 32.) Plaintiffs allege that GHI gave different reasons for denying Tremarcke's claim but ultimately, GHI denied Tremarcke's claim because he was not "actively-at-work." (Plaintiffs' Rule 56.1 Statement, ¶¶ 28-30.) GHI emphatically denies that it terminated Tremarcke's coverage because he was not "actively-at-work." (Defendant's Rule 56.1 Counter-Statement, ¶¶ 27-30.)

Tremarcke subsequently selected COBRA coverage. (Plaintiffs' Rule 56.1 Statement, ¶ 12.) Plaintiffs state that based on the disability extension provided by COBRA, Tremarcke's COBRA coverage period extended an additional eleven months beyond the typical 18 month COBRA period as the Social Security Administration determined Tremarcke to be disabled as of May 2002. (Plaintiffs' Rule 56.1 Statement, ¶ 13.) Plaintiffs state that Tremarcke also remitted payments, pursuant to Comprehensive Omnibus Budget Reconciliation Act of 1986, 29 U.S.C. §§ 1161-1169 ("COBRA"), to UWF beginning in June 2002 through April 30, 2004 and that

UWF passed these payments to GHI. (Plaintiffs' Rule 56.1 Statement, ¶¶ 17-18.) Neither Local 455 nor Classic Chevrolet are parties to this lawsuit.

*Partial Summary Judgment Motions*

Plaintiffs Ames and Pantony move for partial summary judgment on the second cause of action and plaintiff Fred Tremarcke moves for partial summary judgment on the third cause of action of the Amended Complaint.[3]

Defendants also move for partial summary judgment dismissing the second and third causes of action stated in the amended complaint.

**DISCUSSION**

*I.       The Summary Judgment Standard*

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the movant meets this burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). The non-movant cannot avoid summary judgment "through mere speculation or conjecture" or "by vaguely asserting the existence of some unspecified disputed material facts." *Western World*, 922 F.2d at 121 (internal quotations and citations omitted). Moreover, the disputed facts must be material to the issue in the case in

---

[3] It should be noted that Tremarcke has not provided an affidavit in support of his motion for summary judgment or in opposition to defendant's motion for summary judgment.

that they "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship.,* 22 F.3d 1219, 1224 (2d Cir.1994) (citing *Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988)).

II.     *The Health Insurance Portability and Accountability Act*

In 1996, Congress enacted the Health Insurance Portability and Accountability Act. HIPAA amended ERISA, and consequently, sections 701 and 201, 29 U.S.C. § 1181 and 1182 were added ERISA Title 1.  ERISA  § 702 prohibits discrimination based on health factors.

Plaintiffs argue that GHI did not afford Tremarcke coverage consistent with the HIPAA amendments to ERISA.  The parties disagree as to whether Tremarcke can pursue a private cause of action under HIPAA.  Defendant argues that federal courts have yet to find that Congress intended HIPAA to create a private right of action.  Defendant cites mostly unpublished decisions standing generally for the proposition that federal courts reviewing the matter have found that Congress did not intend for HIPAA to create a private right of action.  Many of the cases cited by the defendant address HIPAA's provisions governing the disclosure of individually identifiable health information.  Under those cases, it is clear that plaintiffs cannot bring a HIPAA enforcement action due to improper disclosures of medical information. 42 U.S.C. §§ 1320d-5, d-6.  In fact, HIPAA limits enforcement of the statute to the Secretary of Health and Human Services.  Plaintiffs assert that defendant fails to acknowledge that the part of HIPAA at issue in this motion is contained within Title 1 of ERISA which does provide for private causes of action.  At the time the parties briefed this issue, there was no case that

8

addressed this issue precisely. Recently, in *Werdehausen v. Benicorp Ins. Comp.*, 487 F.3d 660, 667-68 (8th Cir. 2007), the Eighth Circuit agreed with the argument that 29 U.S.C. § 1182 is located in the subchapter that includes ERISA's statutory remedies and therefore may be enforced by an ERISA's participant's claim to enjoin any act or practice which violates any provision of that subchapter. 29 U.S.C. § 1132(a)(3).

The issue that must be decided is whether Tremarcke was eligible for coverage under the UWF-GHI plan as of April 1, 2002, when GHI assumed coverage of UWF participants previously covered by Aetna. If Tremarcke was not eligible for coverage, then the issue becomes whether the UWF-GHI contract violated HIPAA. Defendant challenges Ames's and Pantony's standing to bring a HIPAA claim on behalf of the Fund's participant. Even assuming that Ames and Pantony have standing to bring this claim on behalf of Tremarcke, this Court concludes that the defendant prevails on the merits of this issue and is entitled to partial summary judgment dismissing the second and third causes of action.

Plaintiffs' primary argument is that GHI's refusal to provide health coverage for Tremarcke because he was unable to work as a result of his disability violates Sections 701 and 702, both of which were added to ERISA as a result of the HIPAA amendments. Plaintiff states that, but for Tremarcke's disability, he would have been actively at work for 20 hours or more a week on April 1, 2002, and GHI would have had no reason to deny his eligibility. Plaintiffs argue that ERISA § 702 forbid this type of discrimination. "According to the regulation, GHI could restrict eligibility to those who are actively employed at least 20 hours a week as long as they consider all those who are not physically at work due to health factors to be part of the actively at work group." (Plaintiffs' Memo at 10.) Plaintiffs stress that GHI had to either void

9

the actively-at- work clause from the rider or GHI could "retain the provision requiring active employment of 20 hours a week or more as long as it does not interpret said provision to exclude individuals with disability, as well as other health factors, from eligibility for health coverage." ((Plaintiffs' Memo. at 7.) Defendant counters that it denied Tremarcke's claims because he was not eligible for coverage under the explicit terms of the UWF Plan which required that he work at least twenty hours per week at any time prior to or subsequent to the inception of the Plan. Defendant also argues that its denial of Tremarcke's claims does not constitute a violation of HIPAA because the Plan's restriction of benefits to eligible employees working in excess of 20 hours a week is based on a bona fide classification, is applied uniformly to similarly situated individuals, and is not directed at participant(s) individually.

Pursuant to 29 U.S.C. § 1182(a), "a group health plan, and a health insurance issuer offering group health insurance coverage in connection with a group health plan, may not establish rules for eligibility (including continued eligibility) of any individual to enroll under the terms of the plan based on ... [h]ealth status [and, or] ... [d]isability." 29 U.S.C. § 1182. The regulations provide that "a plan or issuer may distinguish in rules for eligibility under the plan between full-time and part-time employees...."[4] 29 C.F.R. § 2590.702(e)(3). The regulations

---

[4] The regulations provide a series of examples to demonstrate which rules of eligibility violate, or do not violate, HIPAA.

Example 1. (i) Facts. An employer sponsors a group health plan for full-time employees only. Under the plan (consistent with the employer's usual business practice), employees who normally work at least 30 hours per week are considered to be working full-time. Other employees are considered to be working part-time. There is no evidence to suggest that the classification is directed at individual participants or beneficiaries.

(ii) Conclusion. In this Example 1, treating the full-time and part-time employees as two separate groups of similarly situated individuals is permitted under this paragraph (d) because the classification is bona fide and is not directed at individual participants or beneficiaries.

establish that "any restriction on a benefit or benefits must apply uniformly to all similarly situated individuals and <u>must not be directed</u> at individual participants or beneficiaries <u>based on any health factor</u> of the participants or beneficiaries (determined based on all the relevant facts and circumstances)." 29 C.F.R. § 2590.702(b)(2)(B) (emphasis supplied.)

GHI's plan distinguished between individuals who worked in excess of 20 hours per week and individuals who work fewer than 20 hours a week. By its very terms, the Plan's eligibility criteria does not purport to enforce an actively-at-work restriction. For example, under the UWF-GHI Plan, an employee working 15 hours a week would not be eligible for benefits under the Plan, notwithstanding the fact that he/she would certainly be actively at work. There is no actively-at-work issue here because Tremarcke had simply ceased working altogether because he was disabled.[5] Secondly, GHI did not modify an employment-based classification to single out Tremarcke based on his disability, or to deny him health coverage. 29 C.F.R. § 2590.702. The eligibility criteria was not discriminatory on its face, and it was not adopted to exclude Tremarcke or similarly-situated individuals from coverage. Plaintiffs have not established, by reference to the legislative history of the HIPAA amendments, that because

---

29 C.F.R. § 2590.702(d)(1)(2005).

[5] The regulations provide:
a plan or issuer may not establish a rule for eligibility (as described in paragraph (b)(1)(ii) of this section) or set any individual's premium or contribution rate based on whether an individual is actively at work (including whether an individual is continuously employed), unless absence from work due to any health factor (such as being absent from work on sick leave) is treated, for purposes of the plan or health insurance coverage, as being actively at work.

29 C.F.R. § 2590.702(e)(2)(2005). Plaintiffs do not allege that Tremarcke was on sick leave or other authorized leave such as leave pursuant to the Family and Medical Leave Act.

11

the UWF-GHI contract had an adverse impact on an individual with a health factor, the contract's rules for eligibility were discriminatory.

Although the parties brief a multitude of issues, the defendants are correct to argue that, simply, under the plain terms of the GHI Proposal and Rider, Tremarcke was not a covered employee on April 1, 2002. Plaintiffs go to great length to establish Tremarcke's continued coverage under the plan by pointing to the Side Letter of Understanding. The national president of the USWA, Lori Ames writes:

> In my experience, it is typical for a union and an employer to negotiate benefits for individual employees, where circumstances require it, particularly on behalf of long standing union members. The side letter between Local 455 and Classic Chevrolet that classified Mr. Tremarcke as active while he was out on disability is an example of this and legitimately amends the applicable collective bargaining agreement. As long as both the union and the employer agree to the terms of any amendment to the collective bargaining agreement and the amendment violates no applicable state or federal law, the amendment is valid. GHI had no role, nor any right in the negotiations of the collective bargaining agreement between Classic Chevrolet and Local 455 or any of the other collective bargaining agreements governing UWF participants.

(Ames Decl. ¶ 8, Doc. 57.) As set forth in a January 31, 2002 Letter of Understanding executed by Classic Chevrolet and United Service Workers Local 455, Classic Chevrolet maintained Mr. Tremarcke as an active employee until his date of retirement so that he may be eligible for continued coverage under the UWF-GHI plan. (Decl. of Condo, at ¶ 3.)

As a matter of law, plaintiffs do not establish that this Side Letter of Understanding could either amend the CBA or the UWF-GHI contract. For example, plaintiffs do not cite to the portion of the CBA or the UWF-GHI contract which would permit Classic Chevrolet and Local 455 to amend the CBA, and by extension, the obligations of GHI without involving either the

12

Fund or GHI.[6] Defendant does not address the plaintiffs' assertions that this is a common practice. Instead it asserts that plaintiffs concocted this scheme because Tremarcke was not adequately apprised of his COBRA rights by either the Fund or his employer. This Court need not consider defendant's theory. In each brief submitted by plaintiffs, plaintiffs argue that Tremarcke's union and his employer validly bargained to extend his employer's liability–and thereby GHI's- for paying his health premiums by amending the collective bargaining agreement. Plaintiffs make these assertions without reference to the CBA or the UWF-GHI contract. Moreover, when GHI agreed to provide coverage for the Fund, GHI did not assume coverage of employees like Tremarcke who did not work twenty hours or more weekly. Plaintiffs do not establish how Classic Chevrolet and Local 455 could change GHI's bargained-for liability under the insurance contract.

Because plaintiffs could not establish Tremarcke's eligibility for benefits under the UWF-GHI plan during the relevant time period, defendant's motion must be granted, and plaintiffs' motion must be denied.[7]

---

[6] GHI's Proposal stated:

> The terms and conditions of the benefits provided by GHI shall be governed exclusively by provisions of the Group Insurance Contract as it respects benefits and coverage and the Certificate of Insurance, providing for standard comprehensive Benefit Plan benefits. The terms and conditions of GHI's standard Group Insurance contract will govern to the extent that they are not inconsistent with this Proposal. Inconsistent terms will be governed by the Proposal.

(Ames Decl. at Ex. 1, GHI Proposal at § 14.)

[7] Moreover, Tremarcke's motion for partial summary judgment must also be denied because he failed to exhaust administrative remedies. Plaintiffs hardly address this issue by, for example, establishing that attempting to exhaust administrative remedies would have been futile.

## CONCLUSION

Plaintiffs' motion is DENIED. Defendant's motion for partial summary judgment dismissing the second and third causes of action is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
       March 31, 2008

*Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge